# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

      -vs-                 **Case No. 13-C-1304**
                                  (Criminal Case No. 10-Cr-121)

RONALD L. JOHNSON,

        Movant.

---

# DECISION AND ORDER

---

This matter is before the Court on pro se Movant Ronald L. Johnson's ("Johnson") motions pursuant to 28 U.S.C. § 2255 to set aside, vacate or correct sentence; for discovery (ECF No. 17); and to withdraw his career offender claim and for appointment of counsel, an evidentiary hearing, and a ruling on the merits of his remaining claims ("four-part motion"). (ECF No. 25.)

### Relevant Background

By a July 31, 2015, Order (ECF No. 19), the Court granted Johnson's requests to withdraw those portions of his ineffective assistance of counsel claims regarding his speedy trial rights and amend his career offender claim to include reliance on *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Johnson* holds that imposing a more severe sentence under the residual clause of the Armed Career Criminal Act of 1984 ("ACCA"), whereby a defendant

convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a "violent felony,"[1] violates due process because the residual clause is unconstitutionally vague. The Court also set a schedule for the parties to address the amended career criminal sentencing claim, which was subsequently extended.

On September 11, the United States filed a motion to seal and attached a response and the criminal case presentence report ("PSR"). (ECF No. 24.)[2] On September 11, Johnson also filed his four part-motion. On October 28, the Federal Defender Services of Wisconsin filed a statement indicating that it would not appear in this case with respect to the *Johnson* ACCA claim.

## Amendment of Sealing Order

The Court granted the United States' motion to seal its supplemental response including the attached PSR, because a PSR is confidential record (*see* Crim. L.R. 32(a)(1) (E.D. Wis.) and the confidentiality of any information from a PSR is also maintained. However, subsequent review of the government's supplemental response discloses that even under the broadest interpretation,

---

[1] The residual clause defines a violent felony to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

[2] The United States' response was re-filed on September 14 because it did not comply with e-filing requirements that neither it nor the PSR should have been attached to the sealing motion. *See* Filing Restricted and Sealed Documents, 7, March 2015 ("The motion to seal should be filed PRIOR to the filing of any sealed documents.") available at www.wied.uscourts.gov (last visited October 30, 2015).

- 2 -

information from the PSR is limited to last three sentences of the partial paragraph on page three. Therefore, the government's sealing request was overbroad and by the stated deadline it must publicly file a redacted response that excises only those three sentences. (*See* Gen L.R. 79, Committee Comment, ¶ 1(unnumbered) ("The motion to seal should be limited to that portion of the material necessary to protect the movant from the harm that may result from disclosure, e.g., the fact that a single page or paragraph of a document contains confidential material generally will not support a motion to seal the entire document.")) Furthermore, given the confidential nature of PSRs, the sealing order is modified to delete the statement that the government's submission is sealed for a period of one year. Unchanged is the remainder of the order stating that the document (ECF No. 26) including its attachment will be sealed until further order of the Court.

### Four-Part Motion

By his four-part motion, Johnson indicates that he wants to withdraw his career offender claim, stating that at the time he filed his request he was not adequately prepared or familiar with the facts and that he is now well aware that the claim lacks merit. Based on Johnson's statement as well as independent consideration of the *Johnson*-ACCA issue with respect to the facts of this case, the Court concurs and grants Johnson's request to withdraw the claim.

- 3 -

Johnson also requests an evidentiary hearing; however, the request lacks any supporting reasons. A district court has discretion to "deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Li v. United States*, 648 F.3d 524, 532 (7th Cir. 2011) (citation omitted). As will be further explained, the Court has concluded that the papers, files and records in this case establish that Johnson is not entitled to relief. Therefore, the evidentiary hearing request is denied.

Johnson also requests appointment of counsel. However, he has not shown that it is in the interest of justice to appoint counsel under 18 U.S.C. § 3006A. Therefore, these two portions of his four-part motion are denied. By this Decision and Order, the Court grants Johnson's fourth request for a ruling on his § 2255 motion.

## Discovery

Johnson's motion for discovery requests all documents relating to his two criminal cases, 09-CR-83 and 10-CR-121 (the "09 action," the "10 action," respectively), as well as to the original federal criminal complaint. Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that a court may authorize discovery if a party shows "good cause." Rule 6(b) states that the party must "provide reasons" for the discovery request. This rule codifies the Supreme Court's holding in *Harris v. Nelson*, 394 U.S. 286, 300 (1969), that

- 4 -

"where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). A movant's speculation or hope that there is evidence hidden in the record which might support his claim does not constitute good cause. *See Jones v. United States,* 231 Fed. Appx. 485, 488 (7th Cir. 2007) (unpublished decision). Johnson's non-specific, general and broad motion does not establish good cause for discovery.

Johnson's motion also includes a request under the Privacy Act, the Freedom of Information Act ("FOIA"), and similar laws and acts for records referring to him that are maintained at the "DOJ, DEA, FBI, BATF, EOUSA, CITY, COUNTY STATE AND FEDERAL RECORDS." (Discovery Mot. 2.) The FOIA requires federal agencies to make records and documents publicly available upon request, unless they fall within one of several statutory exemptions. *FCC v. AT&T Inc.*, 562 U.S. 397, 399-400 (2011). An agency's disclosure obligation is triggered by its receipt of a request that "reasonably describes" the records sought and "is made in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); *see Citizens for Responsibility and Ethics in Wash. v. FEC*, 711 F.3d 180, 185, n.3 (D.C. Cir. 2013) ("Of course, the duties

- 5 -

that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request.") (Citation omitted).

"The Privacy Act directs agencies to establish safeguards to protect individuals against the disclosure of confidential records 'which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'" *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1450 (2012) (quoting 5 U.S.C. § 552a(e)(10)). The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . ." 5 U.S.C. § 552a(b).

Johnson's motion provides no indication that he has made any request for records from the listed agencies. Rather, he appears to be making the request by means of his filing with the Court.[3] At this juncture, Johnson has not demonstrated any basis for relief based on the Privacy Act or the FOIA. Johnson's motion for discovery is denied.

This Decision and Order will address the balance of Johnson's claims: that he was denied effective assistance of trial counsel and appellate counsel;

---

[3] Under the Privacy Act, an individual may file a civil action when an agency has failed to comply with a request "to gain access to his record or to any information pertaining to him which is contained in the system." 5 U.S.C. §§ 552a(d)(1) and (g)(1)(B). Both statutes permit courts to compel production of documents only when they have been improperly withheld. *See Bogan v. Bureau of Prisons*, No. 06-C-0490-C, 2006 WL 6045183, at *2 (W.D. Wis. Nov. 16, 2006).

- 6 -

that he was denied the right to be tried before an impartial tribunal; and that he was denied his sixth amendment right to be tried on charges found only by the grand jury.

## Background[4]

**S**ometime late in 2008, an informant told City of Milwaukee police that a man known as "Loc" was dealing large amounts of cocaine out of his residence at Unit 301 on West Vliet Street, part of the Hillside Terrace Housing Project in Milwaukee, Wisconsin. The informant told the officers that Loc and his girlfriend, Nina Fenske ("Fenske"), resided in Unit 301, although only Fenske's name was on the lease, and that Loc had a gun and prior criminal history. During two months of surveillance police observed only Fenske and Johnson coming and going from the residence.

On the morning of January 29, 2009, Milwaukee police were prepared to execute a search warrant for Unit 301. Officers Todd Bohlen ("Bohlen") and James Henry, who were conducting surveillance, observed Johnson exit the unit and drive away in a silver Chevrolet Impala. The two officers followed Johnson for about four blocks and pulled him over, although he had not committed any traffic violation. According to Bohlen, the purpose of the stop was to ensure the preservation of evidence and officers' safety during the

---

[4] Unless accompanied by citation, the following facts are taken from the Court of Appeals' decision on Johnson's direct appeal, *United States v. Johnson*, 680 F.3d 966 (7th Cir. 2012).

Case 2:13-cv-01304-LA   Filed 11/09/15   Page 7 of 31   Document 29

search of Unit 301.

Bohlen approached the car and requested a driver's license. Johnson produced a license issued to Joshua McGhee and when asked if he used any aliases, replied "Loc, Ron Loc." When asked, Johnson indicated that his current address was Unit 301. Upon questioning during a patdown search, Johnson stated he had some weed in his shoe. Johnson was handcuffed and placed in Bohlen's vehicle. Johnson's left shoe was removed and a baggie with a small amount of marijuana was found inside. At that time Bohlen informed Johnson of the search warrant for Unit 301. Johnson remained in the back of Bohlen's vehicle while Bohlen called for assistance and a police wagon. Approximately 30 to 40 minutes after the initial traffic stop, Johnson was transported to the housing project in the police wagon. Johnson remained handcuffed in the police wagon while officers searched his apartment; and while waiting in the wagon, Johnson admitted to Bohlen that everything in the apartment was his. Johnson and Bohlen differ on the dialogue between them leading to this admission.

Police officers recovered crack cocaine, marijuana, ecstasy pills, a scale, a firearm, and $19,940 cash from Unit 301. After the search, which lasted approximately one hour, Johnson was transported to the Milwaukee police department's administration building for booking and was taken to an interview room. Johnson and the government differ regarding some aspects of

- 8 -

the interview, but Johnson admitted that the apartment contained a scale, crack cocaine on a shelf in the bedroom closet, and a safe that held a gun and approximately $20,000. He also discussed his knowledge of drug distribution and estimated that in two years he sold approximately 10 to 15 kilograms of cocaine. He identified his supplier as a man from Chicago named "Simon," and remarked that Simon never brought the cocaine to Johnson's home.

In March 2009, a federal grand jury returned a three-count indictment charging Johnson with possession of cocaine base with intent to distribute, possession of MDMA (Ecstasy) with intent to distribute, and possession of a firearm by a convicted felon. This is the 09 action, and it was assigned to Magistrate Judge Aaron E. Goodstein for pretrial proceedings, with the Honorable J.P. Stadtmueller presiding over the entire case.

Johnson, by counsel Peter J. Kovac ("Kovac"), filed a motion to suppress, contending that Johnson was illegally arrested and the statements he made shortly after the arrest were the fruit of the poisonous tree and subject to suppression under *Wong Sun v. United States*, 371 U.S. 471 (1963). Johnson also contended that his statements were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), and therefore subject to suppression. (09 action, ECF No. 19.) While the suppression motion was pending, Judge Stadtmueller recused himself from the case, citing 28 U.S.C. § 455(a) and (b)(3). Thereafter, this Court was assigned to the case.

- 9 -

Following an evidentiary hearing and additional briefing, Judge Goodstein recommended that the motion to suppress be denied. This Court adopted the recommendation and scheduled Johnson's trial for June 1, 2010. In May, Johnson filed a motion to dismiss, arguing that his trial was not conducted within the time requirements of the Speedy Trial Act, 18 U.S.C. § 3162(a)(2). The government agreed that a speedy trial violation had occurred, but asked that the case be dismissed without prejudice. On June 10, 2010, this Court dismissed the case without prejudice.

Later in June, a federal grand jury returned another three-count indictment against Johnson based upon the same evidence as the 09 action. This is the 10 action, which was assigned to Judge Stadtmueller; Magistrate Judge William E. Callahan was assigned to work on the pretrial proceedings.

Johnson was arraigned and new motions deadlines were set. This time Johnson, again with Kovac as counsel, filed motions including one for suppression of evidence based on an alleged *Franks* violation. *See Franks v. Delaware,* 438 U.S. 154, 155-56 (1978) (permitting a defendant to challenge the constitutionality of a search if he can show intentional or reckless misrepresentations in the warrant affidavit). Johnson did not file a motion to suppress statements. Judge Callahan issued a recommendation that Johnson's motions be denied. (10 action, ECF No. 20.) Judge Stadtmueller adopted Judge Callahan's recommendation and denied Johnson's motions. (10

- 10 -

action, ECF No. 26.)

Johnson filed a letter regarding issues he was having with Kovac (10 action, ECF No. 19), and shortly thereafter he filed a pro se motion to have Kovac withdraw (10 action, ECF No. 22). Following a hearing on that motion (at which Kovac did not appear), Judge Callahan granted Johnson's motion and removed Kovac from the case. (10 action, ECF No. 25.) Attorney Russell Jones ("Jones") was appointed to represent Johnson. (10 action, ECF No. 27.)

Jones filed a joint pretrial report and motions in limine on Johnson's behalf. (10 action, ECF Nos. 29, 30, 32.) Johnson requested an order excluding the portion of his statement allegedly telling the officers that he had sold approximately 10-15 kilos of cocaine over the past two years in Milwaukee as not relevant to the pending charges; and adopting the new weights for crack cocaine under the Fair Sentencing Act of 2010 ("FSA") and, as a result, including a jury verdict question asking if the offense involved 280 grams or more of crack cocaine, not the 50 grams set forth in the pre-trial report. Jones also participated in the final pretrial conference. (10 action, ECF No. 34.)

In early January 2011, Judge Stadtmueller presided over Johnson's two-day jury trial. Count Two was dismissed at the start of trial. (Ct. Min, 2.) (10 action, ECF No. 37.) Johnson testified that Feske's friend, Jamie, and her boyfriend, Simon, had moved into Unit 301, and that Johnson felt Simon

staying there was a problem because he was selling drugs from the residence. Johnson admitted that the gun belonged to him, but he denied that the drugs were his. He stated that he lied to officers following his arrest because he was concerned that they would arrest Feske.

After the close of evidence, Judge Stadtmueller instructed the jury and, at the government's request and over Johnson's objection, included an aiding and abetting instruction due to Johnson's testimony that Simon sold drugs out of Unit 301. The jury was also instructed that it was required to determine whether or not the government had proved beyond a reasonable doubt that the offense charged in Count One involved more than 280 grams of a mixture and substance containing cocaine base. (Jury Instr. 16.) (10 action, ECF No. 38.)

The jury convicted Johnson on Count One, possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1), and Count Three, possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). In a special verdict, the jury found that the offense charged in Count One involved more than 280 grams of a mixture and substance containing cocaine base, in the form of crack cocaine. (10 action, ECF No. 39.)

Prior to sentencing, Judge Stadtmueller asked the parties to brief the applicability of the FSA to Johnson's case. By way of background, the FSA,

which took effect on August 3, 2010 (after Johnson's re-indictment), "increased the drug amounts triggering mandatory minimums for crack trafficking offenses." *Dorsey v. United States*, 132 S. Ct. 2321, 2329 (2012). In order to trigger the 10-year mandatory minimum, the FSA requires 280 grams or more of crack cocaine, rather than the 50 or more grams previously required. *Id*. At the time, no determination had been made as to whether the FSA was retroactive. The government sent a letter to Judge Stadtmueller noting that the jury found Johnson liable for 280 grams or more of crack cocaine, so the retroactive application of the FSA was not at issue. (10 action, ECF No. 45.) In other words, the drug amount found by the jury was enough to trigger a ten-year mandatory minimum sentence, even under the FSA's amendments to 21 U.S.C. § 841. On the same day the letter was filed, Judge Stadtmueller recused himself from the case, again citing 28 U.S.C. § 455(a) and (b)(3). The case was reassigned to this Court.

At sentencing, this Court concluded that Johnson was a career offender based on his prior convictions for aggravated robbery, aggravated discharge of a firearm, and aggravated battery with a firearm; and it applied sentencing enhancements for possession of a firearm and obstruction of justice. The Court sentenced Johnson to 300 months on Count One and 120 months on Count Three, to run concurrent to each other and to the state court sentences Johnson was serving. The term of incarceration is to be followed by a total

- 13 -

term of five years of supervised release.

Johnson filed a timely appeal. The court of appeals granted Jones' motion to withdraw and appointed Bradley L. Williams ("Williams") to represent Johnson on appeal. This Court denied William's motion to expand the record on appeal to include the 09 action. (10 action, ECF No. 73.)

On appeal, Johnson challenged several aspects of his conviction and sentence, including (1) the denial of his motion to suppress statements; (2) Judge Stadtmueller's refusal to recuse himself sua sponte; (3) the aiding and abetting instruction given at trial; (4) the application of the obstruction of justice enhancement; and (5) the finding that Johnson is a career offender. Johnson filed a motion with the court of appeals requesting to expand the record on appeal to include the 09 action. The motion was denied by the motions panel. *See United States v. Johnson,* 668 F.3d 540, 543 (7th Cir. 2012).

After oral argument, the court of appeals issued an opinion addressing whether it could consider Johnson's suppression of statements argument because his motion to suppress was not renewed in the 10 action, and it held that Johnson's argument was merely forfeited and could be reviewed for plain error. Accordingly, the appeals court granted Johnson's motion to expand the record on appeal and permitted Johnson and the government to file supplemental briefs addressing the denial of Johnson's motion to suppress in

- 14 -

the 09 action. Ultimately, the court of appeals affirmed Johnson's conviction and sentence. *Johnson,* 680 F.3d at 984.

## Standard for Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This statute states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light most favorable to the government. *See United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000). Relief under § 2255 is an "extraordinary remedy" because the petitioner already has "had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). This relief is available only in limited circumstances, such as where an error of law is

- 15 -

jurisdictional, of constitutional magnitude, or "constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).

Section 2255 petitions are "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir. 1996) (citations omitted). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. *See Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). There are two exceptions: (1) if the movant demonstrates cause for failing to raise the issue and actual prejudice resulting therefrom; or (2) if the court's refusal to consider the constitutional issue would result in a fundamental miscarriage of justice, which requires a showing of actual innocence. *See Belford,* 975 F.2d at 313 (collecting authority); see also *McCleese,* 75 F.3d at 1177-78 (discussing fundamental miscarriage of justice). In light of these principles, the court examines Johnson's motion.

### Ineffective Assistance of Counsel Claims

In order to succeed on his claims regarding ineffective assistance of trial and appellate counsel, Johnson must satisfy the two-prong test set out in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), which requires that he show (1) counsel's performance was deficient; and (2) the deficient performance was prejudicial to the outcome of the case. Unless the movant makes both showings, an ineffective counsel claim has not been established. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

In reviewing an ineffective assistance of counsel claim, the Court should be "highly deferential." *Id*. at 689; *see also United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990). There is a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also United States v. Muehlbauer*, 892 F.2d 664, 668 (7th Cir. 1990). To overcome this presumption, a defendant must point to specific acts or omissions that fall outside the range of acceptable attorney conduct. *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted).

Johnson claims that Kovac, Jones, and Williams were ineffective. Ineffective assistance of counsel is a single claim no matter the number of attorney errors it is based on. *See Peoples v. United States,* 403 F.3d 844, 847-48 (7th Cir. 2005). The contentions against each attorney are discussed below.

- 17 -

*Kovac*

Johnson asserts Kovac was ineffective because (1) he did not file an objection to the magistrate judge's recommendation to deny the motion to suppress statements in the 09 action; (2) he did not file a motion to suppress statements in the 10 action; and (3) he did not file a motion to sever the firearm count from the drug count(s).

In his amended reply brief Johnson focuses on Kovacs' abandonment of his challenge to the basis for the stop without advising Johnson of same. Johnson asserts there was a circuit split as to the proper scope of a detention incident to the execution of a search warrant pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981).[5] (Am. Reply 18-19.) (ECF No. 20.) Johnson also argues that the standard of *United States v. Cronic*, 466 U.S. 648, 659 (1984), which presumes prejudice, applies with respect to this problem with Kovac.

With respect to Kovac's failure to object to the recommendation regarding the motion to suppress statements in the 09 action and his failure to file such motion in the 10 action, Johnson is unable to show that Kovac's performance undermines confidence in the outcome of the actions. *See United*

---

[5] "*Summers* recognized that a rule permitting the detention of occupants on the premises during the execution of a search warrant, even absent individualized suspicion, was reasonable and necessary in light of the law enforcement interests in conducting a safe and efficient search." *Bailey v. United States*, 133 S. Ct. 1031, 1041-42 (2013). *Bailey*, 133 S. Ct. at 1037 resolved the disagreement among the circuit courts.

- 18 -

*States v. Westmoreland,* 712 F.3d 1066, 1080 (7th Cir. 2013) (ineffective assistance does not exist when an attorney fails to pursue an issue which is found to lack merit on appeal).

The Court of Appeals found "no strategic basis for choosing to forego a *Miranda* argument in order to assert a *Franks* violation," *Johnson*, 668 F.3d at 542. However, it found that it was "reasonable for Johnson to believe that this denial was the law of the case and Judge Stadtmueller would not consider an identical suppression motion in the second case, which involved the same charges, facts, and attorneys." *Id.* at 543.

Furthermore, the following three statements made by Johnson were addressed on direct appeal: (1) Johnson's admission that his shoe contained a bag of marijuana; (2) Johnson's statement that everything in the apartment was his; and (3) Johnson's discussion with Officers Andrew Bell and Bohlen about the drugs, gun, and money found in Unit 301. After a careful and detailed review of the three statements, the court of appeals found that the challenges were without merit and affirmed the admission of the statements. *Johnson,* 680 F.3d at 974-79.

With respect to the scope of the *Summers* detention, neither Johnson's arguments nor the decisions of court of appeals for this circuit regarding the proper scope of a *Summers* detention preceding and near the time of Johnson's case suggest that Kovac's abandonment of the issue was prejudicial to the

- 19 -

outcome of the case. Johnson, therefore, cannot meet his burden of showing that he was prejudiced by Kovac's failure to pursue the suppression issues.

Johnson also maintains that Kovac should have filed a motion to sever the firearm and drug counts. Rule 8 provides that a defendant may be charged with multiple counts in the same indictment if the offenses "are of the same or similar character, or are based on the same act or transaction . . ." Fed. R. Crim. P. 8. The indictment charged Johnson with offenses occurring on the same date, at the same location, and involving the same witnesses. The offenses were properly joined. Under Rule 14, severance is appropriate only if the joinder of offenses appears to prejudice a defendant. Fed. R. Crim. P. 14(a). Johnson's prior felony conviction had to be disclosed as an element of the felon-in-possession offense charged in the indictment, and that fact did not warrant severance.

Johnson cites *Old Chief v. United States,* 519 U.S. 172 (1997) in support of his severance argument. *Old Chief* stands for the proposition that a defendant in a felon-in-possession prosecution has a right to stipulate to the fact of a prior felony conviction so that a jury will not hear about the possibly prejudicial nature of that conviction. In this case the parties followed the rule set forth in *Old Chief* and stipulated that Johnson had been previously convicted of a felony offense. (Jury Instr. 18.) Further, Judge Stadtmueller instructed the jury that evidence Johnson had been convicted of a crime

- 20 -

punishable by imprisonment for a term exceeding one year should not "be otherwise considered by [the jury] as evidence of guilt of the crime for which the defendant is on trial." (*Id.*) Johnson has not established that he was prejudiced because Kovac did not file a motion for severance. Kovac was not required to pursue this frivolous motion. *Westmoreland,* 712 F.3d at 1079.

*Jones*

With regard to Jones, Johnson claims numerous deficiencies. Johnson asserts that Jones was ineffective because (1) he did not file a motion to sever the firearm count from drug counts; (2) he did not pursue the motion to suppress statements; (3) the verdict form submitted to the jury to determine the weight of crack cocaine involved in the offense increased Johnson's sentence, and the date of the drug offense was omitted from the jury instructions; (4) he did not file a motion requesting Judge Stadtmueller's recusal in the 10 action based on the judge's recusal in the 09 action; (5) he did not pursue a motion for the return of the drug proceeds and two cars belonging to Johnson; (6) at sentencing he did not object to Johnson's purported career offender status; (7) he erroneously informed Johnson that the maximum sentence he faced was 12 years imprisonment; and (8) he failed seek an adjournment of the trial date.

With regard to Johnson's claims that Jones should have sought severance and pursued the motion to suppress statements, the analysis in the

preceding section applies. Johnson was not prejudiced by those purported deficiencies.

Johnson maintains that a mistake in the verdict form amended the indictment in violation of *Apprendi v. New Jersey*, 530 US 466 (2000), and allowed his sentence to be unlawfully increased. He also contends that the date of the drug offense was omitted from the jury instructions, which allowed the jury to mistakenly consider his distribution of crack cocaine from the preceding two years in determining the weight of crack cocaine attributable to him with respect to the drug count.

Contrary to Johnson's contention, the jury was instructed regarding the date of the offense alleged for the drug count. The full text of the indictment was included in the jury instructions, and the date of the alleged offenses — January 29, 2009 — was reiterated. (Jury Instr. 13-14.) Consistent with *United States v. Alleyne*, 133 S. Ct. 2151 (2013), which requires that any fact increasing a mandatory minimum sentence must be found by a jury beyond a reasonable doubt, the jury found that Johnson's drug offense involved 280 or more grams of crack cocaine, triggering the mandatory minimum of 10 years imprisonment. (10 action, ECF No. 39.) Moreover, the finding that the offense on January 29, 2009, involved 280 grams or more of crack cocaine was supported by the evidence introduced at trial. A total of 204 grams of crack cocaine was found in Johnson's home.

Additionally, Johnson admitted that he had received a kilogram of cocaine from his supplier the day before. (Tr. 110-11, 119, 149.) (ECF No. 48.) Thus, the jury could reasonably conclude that the drug offense charged in the indictment involved at least 280 grams of crack cocaine without taking into consideration Johnson's statements about the amount of drugs he dealt in the preceding two years.

Finally, the relevant quantity — 280 grams — was treated as an element of the offense and proved beyond a reasonable doubt at trial. Consequently, *Apprendi* is only implicated because the indictment did not contain the precise quantity that the jury later found. *See United States v. Feliciano-Galves,* No. 11-204, 2013 WL 1982150, at *2 (2d Cir. May 15, 2013). An *Apprendi* violation concerning an omission from an indictment is not plain error where the evidence is "overwhelming" and "essentially uncontroverted" so that the grand jury would have found the fact at issue. *See United States v. Cotton,* 535 U.S. 625, 631-34 (2002) (addressing the *standard* on direct appeal); *Feliciano-Galves,* 2013 WL 1982150, at *2. The *Cotton* (or a more deferential) standard should apply when evaluating the issue in the context of an ineffective assistance of counsel claim.

Considering the quantity of crack cocaine found in Johnson's home and his admission that he had received a kilogram of cocaine the day before the search warrant's execution under the less demanding probable cause

- 23 -

standard, the grand jury would have reached the same conclusion as the trial jury with regard to the drug quantity involved in Johnson's offense. *See Cotton*, 535 U.S. at 631-34; *United States v. Lee*, 724 F.3d 968, 974 (7th Cir. 2013) (noting that the district court had submitted a special verdict form to jury in anticipation of the FSA's application); *Feliciano-Galves,* 2013 WL 1982150, at *2. Accordingly, Johnson has not established that he was prejudiced by submitting the drug quantity that triggered the mandatory minimum under the FSA to the jury.

Furthermore, Johnson should have been on notice regarding the penalties he faced. The indictment charged him with a 10-years-to-life drug offense. At trial, the parties agreed to the submission of a special verdict form which asked the jury to find if the offense involved 280 grams or 50 grams of crack cocaine. At the time a determination had not been made as to whether the FSA was retroactive, so both quantities carried the same penalty. Moreover, at sentencing the Court followed the holding of *United States v. Fisher,* 635 F.3d 336, 340 (7th Cir. 2011), that the FSA was not retroactive.[6] (Sentencing Min. 4) (ECF No. 60.) Additionally, Johnson faced significant penalties as a career offender and that status drove the 300-month sentence on the drug count.

---

[6] *Fisher* was controlling in this circuit at that time and properly followed. The Supreme Court later differed in *Dorsey,* 132 S. Ct. at 2331, and vacated and remanded *Fisher*, having determined that the FSA was retroactive for cases like Johnson's.

Johnson maintains that Jones was ineffective for allowing Judge Stadtmueller to preside over the trial in the 10 action after the judge had recused himself from the 09 action. Addressing this issue, first raised on appeal, the appeals court held:

> The evidence before the court indicates that Johnson received a fair trial and the fairness and integrity of the judicial proceedings were unaffected by Judge Stadtmueller's presence. There is no actual evidence of any bias or impartiality during trial. At most, Johnson was denied the benefit of having the same judge preside over his trial and sentencing.

*Johnson*, 680 F.3d at 980. Furthermore, the court of appeals found that there was no indication Johnson was prejudiced by this Court presiding over his sentencing after Judge Stadtmueller's recusal. *Id*. Because there is no evidence that Johnson was prejudiced by Judge Stadtmueller presiding at the trial and his subsequent recusal, this portion of Johnson's ineffectiveness of counsel claim also fails.

Johnson asserts that Jones should have filed motions challenging the forfeiture of more than $19,000 and two cars. However, he does not provide any facts or evidence that would support a claim for return of the subject property. Without more, this claim fails. *See Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).

Johnson maintains that Jones did not object regarding his status as a career offender. However, the sentencing minutes and the transcript of the

- 25 -

sentencing disclose that Jones did object, which also preserved the issue for appeal. On appeal, Johnson's status as a career offender was upheld. *Johnson,* 680 F.3d at 983-84. Further, contrary to Johnson's suggestion, his maximum exposure was not increased as a result of his status as a career offender, it remained life imprisonment.

Johnson alleges that Jones told him his maximum exposure, if convicted, was 12 years imprisonment and that Johnson decided to proceed to trial based on this information. (Pet. 7-N.) However, in an affidavit filed by the government, Jones avers he told Johnson that the maximum penalty for the drug count was life imprisonment and the maximum penalty for the firearm count was ten years imprisonment. (Jones Aff. ¶ 3.) (ECF No. 4-1.) Furthermore, Jones indicates that at no time during multiple conversations did Johnson ever want to enter a guilty plea, he wanted to pursue a trial. (*Id.* at 4.) Additionally, after the trial Jones reviewed with Johnson the maximum penalties found at ¶ 88 of the PSR, and Johnson never made any comment or indication that he thought the maximum penalty was 12 years. (*Id.* at ¶ 5.)

Although Johnson filed an affidavit in support of his petition (ECF No. 10), that affidavit does not mention Jones and, therefore, does not create a factual dispute with respect to Jones' conversations with Johnson. Johnson has not established that Jones advised him the maximum penalty was 12

- 26 -

years if he was convicted of the charges. Thus, this portion of Johnson's ineffective assistance of counsel claim against Jones fails.

Johnson claims that Jones was ineffective because he did not request an adjournment of the trial date. Jones was appointed to represent Johnson, nunc pro tunc, on November 23, 2010. (10 action, ECF No. 27.) The jury trial was held more than 40 days later. Jones filed a joint final pretrial report and two motions in limine prior to the trial, and the trial transcript demonstrates that Jones was well prepared for trial. Johnson has not met his burden of showing that he was prejudiced by Jones's failure to seek a continuance of the jury trial.

### Williams

Johnson asserts that Williams was ineffective because he did not argue that the court of appeals lacked jurisdiction because Johnson was stopped by the police without reasonable suspicion or probable cause. Johnson must show that this omitted issue would have resulted in reversal on appeal. *See Kitchen v. United States,* 227 F.3d 1014, 1020-21 (7th Cir. 2000).

Judge Goodstein's recommendation on the suppression motion in the 09 action states "[t]he defendant initially challenged his arrest and his statements. In his post-hearing memorandum, Johnson has abandoned any challenge to his arrest and seeks to suppress only his statements on the basis that they were obtained in violation of his *Miranda* rights." (October 6, 2009

- 27 -

Report and Recommendation, 9.) (09 action, ECF No. 31.) The recommendation regarding the denial of Johnson's motion to suppress his statements was adopted by this Court. (Court's Feb. 24, 2010, Order.) (09 action, ECF No. 38.)

Although the suppression motion litigated in the 09 action was not renewed in the 10 action, Williams made significant efforts on appeal to obtain review of the issues surrounding the admissibility of Johnson's statements. Williams filed a motion with this Court requesting expansion of the appellate record to include the suppression issue that was litigated in the 09 action. When that motion was denied, he filed two motions with the court of appeals for expansion of the record. He was successful in his efforts to expand the record, and the court ordered supplemental briefing on the suppression of statements issue Kovac raised in the 09 action.

Ultimately, the Court of Appeals determined that the statements resulting from Johnson's initial contact with law enforcement were lawful. *Johnson*, 680 F.3d at 974-75. However, any attempt by Williams to challenge Johnson's arrest on appeal would have been unsuccessful due to Johnson's earlier abandonment of the issue. Failure to raise a losing argument is not ineffective assistance of counsel. *Stone v. Farley,* 86 F.3d 712, 717 (7th Cir. 1996). Additionally, Johnson cannot demonstrate that he was prejudiced under *Strickland*.

- 28 -

## Impartial Tribunal Claim

Johnson's impartial tribunal claim relates to the fact that Judge Stadtmueller recused himself in the 09 action during the pretrial proceedings but presided over the 10 action until the jury trial was complete and then recused himself. This issue was considered and rejected by the court of appeals. *See Johnson*, 680 F.3d at 979-80. Johnson has not shown any changed circumstances and thus is procedurally barred from bringing this claim in his § 2255 motion. *See Belford*, 975 F.2d at 313.

## Right To Be Tried On Charges Found By The Grand Jury

Count One of the grand jury indictment charged Johnson with possession of a mixture and substance "containing 50 grams or more of" cocaine base in the form of crack cocaine with intent to distribute (10 action, ECF No. 1),but it did not include the 280 grams amount. However, the jury was instructed that it was required to make a finding regarding whether or not the government had proved beyond a reasonable doubt that the offense charged in Count One involved 280 grams of crack cocaine, and it returned a special verdict finding that the offense charged in Count One did involve 280 grams of crack cocaine. This ground was not raised on direct appeal, and Johnson has not demonstrated any basis for excusing this procedural default. Therefore, Johnson is procedurally barred from bringing this clam in his § 2255 motion and cannot show a fundamental miscarriage of justice.

- 29 -

## Summary

Based on the foregoing, this Court concludes that Johnson has not established a basis for relief under § 2255. Therefore, Johnson's motion is denied.

## Certificate of Appealability

When a court enters a final judgment against a movant, it must also issue or deny a certificate of appealability. Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Court. Johnson's motion does not evince a "substantial showing" that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). Furthermore, this Court certifies to the court of appeals that it has concluded jurists of reason would not find it debatable whether this Court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2). Accordingly, the Court will not issue a certificate of appealability.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**No later than November 17, 2015** the government **must publicly file** a redacted version of its supplemental response (ECF No. 26) that omits

only the three sentences that contain information from the PSR;

The sealing order (ECF No. 27) is modified to delete the statement that the government's submission is sealed for a period of one year. Unchanged is the remaining portion of that order stating that the supplemental response and PRS are sealed until further order of the Court;

Johnson's motion for discovery (ECF No. 17) is **DENIED**;

Johnson's four-part motion (ECF No. 25) is **GRANTED** with respect to withdrawal of his *Johnson*-ACCA claim and for a ruling, and **DENIED** in all other respects;

Johnson's petition for a writ of habeas corpus (ECF No. 1) is **DENIED**;

The Court **DECLINES TO ISSUE** a certificate of appealability;

This action is **DISMISSED**; and

The Clerk of Court is **DIRECTED TO ENTER JUDGMENT** accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2015.

BY THE COURT:

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 31 -